# Exhibit B

**INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION**
International Arbitration Tribunal

|  |  |
|---|---|
| Palmco Administration, LLC | ) ICDR Case No. 01-21-0016-1420 |
| -vs- | ) ) ) ) ) |
| GQA Holdings LLC and Flower Payment, Inc. (formerly known as Flower Power, Inc. and Flower Power Co. Ltd. Japan a/k/a Flower Denryoky Kabushiki Kaisha)) . | ) ) ) ) |

_____

## **PARTIAL FINAL AWARD**

WE, THE UNDERSIGNED ARBITRATORS, having been designated in accordance with the arbitration agreement entered into between the above-named parties and dated November 8, 2019, and having been duly sworn, and having duly heard the proofs and allegations of the parties, do hereby, AWARD, as follows:

I.    **THE PARTIES**

1.    Claimant is Palmco Administration LLC, ("**Palmco**") a limited liability company

organized under the laws of New York and having its principal place of business in New

York.  Palmco is engaged in the energy business, and specifically in providing alternatives

to traditional utilities as suppliers of electric power to end users.

2.    Respondents are GQA Holdings LLC ("GQA") and Flower Payment, Inc. Respondent

Flower Payment, Inc. ("**Flower Payment**" or "**Respondent**") was formerly known as

Flower Power, Inc. and Flower Power Co. Ltd. Japan.  Flower Payment is a company

organized under the laws of Japan and having its principal place of business at 3-3-1 Shin-

Tokyo Bld 3F Marunouchi, Chiyoda-ku Tokyo, 100-0005, Japan.  Respondent GQA is

understood to be a limited liability company organized under the laws of Delaware and

having its principal place of business at 1485 Hartford Terrace Alpharetta, GA 30004.

Respondent GQA has not appeared in this arbitration.

| Claimant is represented by: | Respondent Flower Payment is represented by: |
|---|---|
| Ira G. Greenberg<br>LOCKE LORD LLP<br>200 Vesey Street, Suite 2001<br>New York, New York 10281<br>U.S.A. | Akihiro Matsuo<br>MATSUOCHIYODA ATTORNEY OFFICE<br>3F  UmemuraMeishoBldg.<br>1-19 Kanasuda-Cho Chiyoda-Ku Tokyo, Japan |

II.    **THE AGREEMENT TO ARBITRATE**

3.    The Claimant submitted a Notice of Arbitration ("NOA") to the American Arbitration

Association on August 12, 2021, to commence an arbitration against the Respondents

pursuant to the International Arbitration Rules of the International Centre for Dispute

Resolution (the "ICDR Rules") in force as of March 1, 2021.

4.    The arbitration was commenced pursuant to an arbitration agreement contained in a

Membership Interest Purchase Agreement dated November 8, 2019 (the "Purchase

Agreement").  Section 11.22 of the Purchase Agreement provides:

"the Parties agree that any controversy or claim arising out of or relating to this Agreement or its formation, interpretation or breach, shall be resolved by arbitration administered and held in accordance with the then International Arbitration Rules of the International Centre for Dispute Resolution (the "ICDR Rules"; see: www.adr.org). The arbitration shall be conducted in the English language in New York County, New York, U.S.A., by three neutral arbitrators, appointed in accordance with the ICDR Rules. The award shall be in the English language. The arbitrators shall decide the dispute in accordance with the laws of the State of New York, USA, applicable to agreements executed and to be fully performed in such state (choice of law rules that might cause the application of the laws of any other jurisdiction shall not apply). The award of the arbitrators shall be final, shall not be subject to appeal or review, and may be entered in any court of competent jurisdiction anywhere in the world."

5.    Section 11.7(b) of the Purchase Agreement provides: "Each Party agrees that the

provisions of this Agreement relating to determination of disputes by arbitration under the

ICDR Rules are intended to provide the exclusive means of finally resolving disputes

among or between them." Also relevant is Section 11.7(a) of the Purchase Agreement

which provides "this Agreement will be governed by, construed, and enforced in

accordance with the Laws of the State of New York, without regard to choice of law

principles that would require the application of the Laws of any other jurisdiction."

6.    Respondent Flower Payment submitted its Answer to the Request for Arbitration on

January 14, 2022, which it styled "Opinion".  Respondent asserted Flower Payment "has

not entered into any contract with Palmco Administration LLP […] and "the signature in

the name of FP on the contract submitted in this case is a forgery[.]"

III.    **PROCEDURAL HISTORY**

7.    On October 26, 2021, the ICDR invited the three arbitrators to serve on the Tribunal.  After

confirming availability and lack of conflicts, the ICDR, pursuant to ICDR Arbitration Rule

2

13(6), confirmed the appointment of the three arbitrators as the members of the Tribunal. On November 11, 2021, the three arbitrators appointed Arbitrator Elul as Chair presiding over the Tribunal.

8.   On December 15, 2021 the Tribunal held a Procedural Hearing with Counsel for Claimant and Respondent Flower Payment.

9.   By Procedural Order No. 1 dated January 4, 2022, the Tribunal appointed Mr. Shigeki Obi of Hughes Hubbard & Reed to serve as Tribunal Secretary solely to assist in translation during procedural calls with counsel for Respondent.

10.  On January 25, 2022 the Tribunal held another Procedural Hearing with the parties.

11.  On February 7, 2022, the Tribunal issued Procedural Order No. 2, which set the schedule and procedures for the arbitration.

12.  On March 8, 2022, the Tribunal issued Procedural Order No. 3, which, by motion of Claimant and with assent of Respondent modified the caption to reflect the fact that the initially-named respondents Flower Power, Inc. and Flower Power Co. Ltd were a single entity named Flower Payment, Inc.

13.  On March 17, 2022, the Tribunal held a procedural call at which certain discovery matters, and in particular Respondent's non-compliance with the procedural schedule concerning discovery, were discussed.  By Procedural Order No. 4 dated March 30, 2022, the Tribunal scheduled a follow-up procedural call for April 5, 2022 to discuss the timetable for the merits hearing.

14.  On April 25, 2022, the Tribunal issued a procedural order (erroneously also styled Procedural Order No. 4), setting a timetable for the merits hearing to take place on May 16 and May 17, with reserve dates for May 18 and May 19 as needed.  It was agreed that in

light of the COVID-19 pandemic that the hearing would take place remotely via zoom

videolink.

15. On May 2, 2022, the Tribunal held a procedural call in which the logistics for the remote

hearing were discussed.  On May 5, 2022, the Tribunal issued Procedural Order No. 5

adopting Protocols for the Remote Hearing.

16. The Parties exchanged the following evidence and submissions prior to the merits hearing:

Claimant served the Witness Statements of Norton W. Lazarus, Chartered Accountant and

advisor to Palmco ("WS-Lazurus"), Robert Palmese, principal and shareholder of Palmco.

("WS-Palmese"), Barry J. Bendes Partner at Locke Lord LLP and counsel to Palmco

("WS-Bendes"), and Ira S. Greene, Partner at Locke Lord LLP and counsel to Palmco

("WS-Greene").  Claimant also submitted Claimant's Exhibits 1 through 41.  Finally,

Claimant submitted a Prehearing Memorandum dated May 9, 2022.  Respondent Flower

Payment submitted the Witness Statement of Mr. Shinnosuke Wakahama, director of

Flower Payment  ("WS-Wakahama").  Respondent also submitted Respondent's Exhibits 1

through 3.

17. The Merits Hearing was duly held on May 16-17.  The hearing was held in English, with

translation provided in Japanese for Respondent.  The hearing was transcribed by a court

reporter.

18. Each of Claimant's witnesses appeared for cross-examination.  Respondent's witness, Mr.

Wakahama, did not appear for cross-examination at the designated time on May 16, 2022.

The Tribunal provided leave for Respondent to present Mr. Wakahama for cross-

examination on May 17, 2022 and informed Respondent's counsel that, if Mr. Wakahama

did not appear, his witness statement could be stricken.  However, by email dated May 16,

2022, Respondent's counsel informed the Tribunal that Mr. Wakahama would not be appearing for cross-examination.

19. On May 17, 2022, the Tribunal heard oral closing presentations.  The Tribunal also heard argument from each party on Claimant's motion to strike the Wakahama witness statement on the grounds that Mr. Wakahama had not appeared for cross-examination.  The Tribunal granted Claimant's motion to strike pursuant to ICDR Rule 26(4).  The Tribunal also, at Claimant's motion, struck Respondent's Exhibit 1 for lack of foundation.

20. On June 26, 2022, after receipt of the transcript of the merits hearing, the Tribunal closed the evidentiary record, save as to submissions with respect to interest, fees and costs.

## IV.    FACTUAL BACKGROUND

21. This dispute arises out of the Purchase Agreement dated November 8, 2019 executed between Claimant and Respondents.  While Respondent Flower Payment denies having executed the Purchase Agreement, as discussed below, the Tribunal rejects this claim and finds that both Respondents were authorized to and did execute the Purchase Agreement.

22. Claimant alleges the wrongful retention by Respondents of $1,646,690.02 in contravention of Section 2.2(a) of the Purchase Agreement.

23. The Purchase Agreement concerns the sale to Respondents of Claimant's energy business, which had been formed for the purpose of entering into the newly opened Japanese utilities market.

24. As noted *supra*, Palmco is a New York limited liability company. Four members of the Palmese family, who are all of Palmco's owners, are engaged in the energy business — specifically, providing alternatives to traditional utilities as suppliers of electric power to end users. WS-Lazarus ¶ 4.  They decided to enter the newly opened Japanese market in approximately 2018. *Id*. ¶ 5. To do so they formed International Energy Holding, LLC

("IEH"), a Delaware limited liability company, which in turn owned their Japanese operating company, Family Energy, G.K. *Id.* ¶ 6.

25. Flower Payment acted as the Palmeses' advisor and factor in the proposed venture. *Id.* ¶ 9. In that connection, Palmco posted cash collateral as security at the request of Flower Payment's bank. *Id*. ¶¶ 9-10. For a variety of reasons, Palmco determined to exit the Japanese market and to sell their Japanese operating company to Flower Payment. *Id*. ¶¶ 7-8, 12.

26. Norton Lazarus, a New York investment banker advising Palmco on the business side, negotiated the purchase and sale with Sumitaka ("Sam") Matsumoto, a director of Flower Payment. Id. ¶¶  13-14. Claimant alleges that "Mr. Matsumoto spoke excellent English." *Id* ¶ 14.  Respondent presents no evidence to refute this allegation.  Email correspondence submitted as evidence by Claimant shows communication between Claimant and Mr. Matsumoto in English.  *See, e.g.,* Exs. C-11 through C-25.

27. Mr. Matsumoto acted as the principal point of contact at Flower Payment during the course of their operation of Family Energy. WS-Lazarus ¶14; WS-Palmese ¶¶ 4-5.  Mr. Matsumoto identified himself as a director of Flower Payment.  WS-Lazarus ¶ 15.   Flower Payment's internal documentation confirms that at least through July 25, 2021, Mr. Matsumoto was a director of Flower Payment.  Ex. C-36.  The email traffic shows Mr. Matsumoto communicating or stating he will communicate with Shinnosuke Wakahama, Flower Payment's chief executive officer, about the transaction. WS-Lazarus ¶15; Exhibits C-13 to C-17, C-20 to C-27.  As Flower Payment's chief executive officer, Mr. Wakahama was "in overall charge of the company's operations."  Ex. R-2.

28.  At the same time, Mr. Bendes, a senior corporate partner in the New York office of Locke
     Lord LLP, negotiated both deal terms and contract language with Sonjui Kumar, a partner
     in an Atlanta, Georgia, law firm that had been retained to represent Flower Payment in the
     transaction. WS-Bendes ¶¶ 7-8; see Ex.C-18; WS-Lazarus ¶¶ 16-18. Claimant's witnesses
     testify that no one from Flower Payment disavowed Ms. Kumar's authority to act for it.
     WS-Bendes ¶ 19; WS-Palmese ¶ 6. Flower Payment set up a Delaware LLC, Respondent
     GQA Holdings, LLC, as its special purpose acquisition vehicle for the purpose of the
     Purchase Agreement. WS-Lazarus ¶¶ 23-24; WS-Bendes ¶ 7. Exhibit C-41 shows that Ms.
     Kumar set up GQA on September 27, 2019.

29.  Through the Purchase Agreement, GQA acquired IEH for consideration in the amount of
     $1,048,000.  Ex. C-1.  GQA also agreed to a return of Palmco's collateral in the amount of
     $1,646,690.02 (the "**Collateral**") that had previously been posted in a Japanese bank on or
     before April 30, 2021.  Ex. C-1 § 2.2(c).  Through the Purchase Agreement, Flower
     Payment provided a guarantee of that obligation. Ex. C-1 §. 6.7.  Sections 5.1 and 5.2 of
     the Purchase Agreement represent and warrant that Flower Payment has the corporate
     power to execute the documents and to perform its obligations under them and that the
     documents contain Flower Payment's "valid and binding obligations," enforceable against
     it.

30.  Because Flower Payment alleges it never executed the Purchase Agreement, the events
     surrounding the closing are significant.  The evidence shows that the Palmeses executed
     and delivered the Agreement and the required bills of sale (assignments of all of their
     membership interests in IEH, and thereby derivatively the ownership of Family Energy) to
     GQA via Ms. Kumar. Exhibits C-1 to C-5.  On November 8, 2019, Ms. Kumar advised Mr.

7

Bendes that "[t]he Buyer [GQA] and FP Japan are signed off on the closing documents subject to confirmation from the Sellers and Palmco that the balance of the notes due by IEH (after the wire of $1,048,000 on Tuesday Nov. 12th) have been written off immediately prior to the Closing as provided in the MIPA." Ex. C-10. Also on November 8, 2019, Ms. Kumar transmitted to Locke Lord, Palmco's counsel, the executed signature pages of the Purchase Agreement stating, "Here are the Buyer's signature pages to the MIPA and the Assignments to be held in escrow." Ex. C-9. Ms. Kumar copied Mr. Matsumoto of Flower Payment on that email. Exhibit C-9.

31. By email dated November 8, 2019, Mr. Matsumoto indicated to Ms. Kumar that the deal could not close and "[w]e cannot wire the money without seeing the final document." Ex. C-22.

32. On November 12, 2019, Mr. Matsumoto – apparently having seen the final documents -- sent an WeChat stating "[w]e are all good to go" and authorized Ms. Kumar to transfer the initial payment of slightly over $1 million. Ex. C-12

33. On November 12, 2019, the deal closed after Flower Payment, through Ms. Kumar's law firm's escrow account, made the initial payment by wire transfer to a New York bank. Ex. C-26; see WS-Lazarus ¶ 29. The bulk of the payment came from Flower Payment. WS-Bendes ¶ 11; see Exhibit C-7. As noted, *supra*, Mr. Wakahama was copied on many of the emails relating to the transaction. See Exhibits C-14 to -15, C- 21 to -22. Mr. Lazarus also sent a "thank you and congratulations" email to, among others, Mr. Wakahama. Exhibit C-27; see WS-Lazarus ¶ 29.

34. Following the closing, Mr. Matsumoto approved the design of an advertisement with Flower Payment's logo that memorialized the deal's closing. Exhibit C-28; WS-Lazarus ¶

33. In addition, Timothy Connor, Palmco's representative in Japan, set up a meeting to introduce Flower Payment as the new owner to Family Energy's personnel. Mr. Wakahama was copied on that email, in which Mr. Matsumoto advised that Mr. Wakahama was expected to attend that meeting. Exhibit C-23; WS-Lazarus ¶ 31.

35. Palmco's witnesses testify that Flower Payment did not at that time, or until this arbitration, take the position that there was any legal impediment to the Purchase Agreement's effectiveness as to Flower Payment. WS-Lazarus ¶¶30, 34; WS-Bendes ¶¶ 12, 16; WS-Palmese ¶ 5.

36. On March 24, 2021, Palmco, through Ira S. Greene, another partner in Locke Lord, sent an email reminder to Ms. Kumar that the obligation to return Palmco's money was about to become due.  Ex. C-40; Witness Statement of Ira S. Greene, May 4, 2022, ¶ 2 ("WS-Greene"). This was a little more than a month before the payment date was set to become due (*i.e.*, on April 30, 2021).  Ex. C-1 § 2.2(c).

37. On April 21, nine days before the due date, Mr. Matsumoto contacted Mr. Palmese directly to ask to talk "regarding the payment." Exhibit C-39; WS-Palmese ¶ 8. Mr. Greene asked Ms. Kumar to communicate with him instead. Exhibit C-40; WS-Greene ¶ 3, Palmese WS ¶ 8.  On April 23, 2021, Ms. Kumar forwarded an Excel spreadsheet to Mr. Greene that Mr. Matsumoto had apparently previously sent to her. Exhibit C-40. It contained alleged offsets to the section 2.2 payment obligation, among which were "physical receipts and evidence of expenditures made by Flower [Payment]" and "[e]xpenses covered by [Flower Payment]." Id.

38. Subsequently, Flower Payment claimed that it could not pay the amount due as a result of various exigencies, including the COVID-19 pandemic and a national Japanese holiday.

Flower Payment promised to pay the money soon. Exhibit C-11. After payment was not made, Palmco initiated this arbitration. WS-Lazarus ¶¶ 35-36.

## V.    ANALYSIS

### a.    Summary of the Parties' Positions

39. Claimant's position in this arbitration is that the Purchase Agreement was properly executed by Flower Payment and that Flower Payment guaranteed GQA's obligations to return the Collateral. Claimant argues that upon Flower payment's failure to repay the Collateral is a breach of the Purchase Agreement. *See generally* Claimant's Prehearing Memorandum at 11-17.

40. Respondent Flower Payment's position is that it did not execute the Purchase Agreement, that the execution by Mr. Matsumoto was a forgery and that, accordingly, it is not subject to the jurisdiction of the Tribunal. *See generally* Respondent's Answer.

41. As discussed below, the Tribunal finds that the law and evidence supports Claimant's position.

### b.    The Jurisdiction of the Tribunal

42. The Tribunal concludes that it has jurisdiction.

43. As an initial matter, the Tribunal finds that it has jurisdiction to determine its own jurisdiction over this dispute under the broad language of the arbitration agreement. Section 11.22 of the Purchase Agreement states " ...[T]he parties agree that *any controversy or claim arising out of or relating to this Agreement* or *its formation, interpretation or breach,* shall be resolved by arbitration administered and held in accordance with the...ICDR Rules." The Purchase Agreement further incorporates the ICDR Rules, which at Article 21 grants the Tribunal competence to determine its own jurisdiction. Article 21 states in relevant part:

(1)     The arbitral tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to arbitrability, to the existence, scope, or validity of the arbitration agreement(s), or with respect to whether all of the claims, counterclaims, and setoffs made in the arbitration may be determined in a single arbitration, without any need to refer such matters first to a court.

(2)      The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the tribunal that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

This further constitutes clear and unmistakable intent that the Parties' agreed to arbitrate the issue of arbitrability.

44.    Furthermore, in exercising its jurisdiction to determine its own jurisdiction, the Tribunal concludes, as discussed below, that the Purchase Agreement was validly executed by Flower Payment.  Section 11.2 therefore constitutes an enforceable arbitration agreement as to Flower Payment.

   c.    __The Validity and Enforceability of the Purchase Agreement__

45.    The Tribunal finds that the evidence demonstrates that Flower Payment executed the Purchase Agreement.  On its face, the Purchase Agreement bears a signature in the designated place for Flower Payment.  Ex. C-1.  This signature was represented by Ms. Kumar, Flower Payment's attorney and authorized representative, to be "the Buyer's signature pages to the MIPA and the Assignments". C-9.  Ms. Kumar in the same email chain stated: "The Buyer and FP Japan are signed off on the closing documents subject to confirmation from the Sellers and Palmco that the balance of the notes due by IEH (after the wire of $1,048,000 on Tuesday Nov. 12th) have been written off immediately prior to the Closing as provided in the MIPA."  Ex. C-10.

46.    While Respondent claims in its answer that the signature was a "forgery" it provided no evidence of such.  It is unclear whether the signature is that of Mr. Matsumoto or Mr.

11

Wakahama.  In either event, the exact identity of the signatory does not alter the binding nature of the contract.  Under New York law, a corporate officer is deemed to have authority to sign a contract.  If the signatory was Mr. Wakahama, then the Purchase Agreement is binding as to Flower Payment because the evidence shows that he was the CEO of that company.  *See Goldston v. Bandwith Technology Corp.*, 52 A.D.3d 360, 363 (1st Dept. 2008).   If the signatory was Mr. Matsumoto, then the Purchase Agreement is binding as to Flower Payment because he was the Director of that company at the relevant time.  Ex. C- 36.

47.   At a minimum, the facts here also establish that Mr. Matsumoto had apparent authority to bind Flower Payment.  New York law applies to this issue pursuant to section 11.7 of the Purchase Agreement and, to the extent necessary, under a New York conflicts of law analysis.  Apparent authority exists under New York law where an individual holds himself out as having authority, negotiates an agreement and the other party has no reason to doubt the factual basis of that authority.  *See Merrell-Benco Agency LLC vs. HSBC Bank USA*, 20 A.D.3d 605, 608 (3rd Dept. 2005); *Standard Builders Supplies v. Gush*, 206 A.D.2d 720, 721 (3rd Dept. 1994).  That is the case here.

48.   Mr. Matsumoto extensively negotiated the Purchase Agreement with Palmco.  Ms. Kumar, Flower Payment's attorney, participated in these negotiations.  Mr. Wakahama was copied on at least 13 emails describing the transaction, up to and through the Closing.  See Exhibits C-13 through C-17 and C-20 through C-27.  Mr. Matsumoto stated that the deal would not close until "we" (presumably Mr. Wakahama and Mr. Matsumoto) reviewed the final deal documents.  Ex. C-22.  Following this statement Mr. Matsumoto approved the closing of the transaction, thus indicating the documents had been reviewed and approved.

Ex. C-12. It was only after this that Ms. Kumar made payment on behalf of GQA.  Again
Mr. Wakahama was copied on emails concerning the payment and closing of the
transaction.  *See, e.g.,* C-27.

49.   In reliance on the statements of Mr. Matsumoto and Ms. Kumar, Palmco conveyed to GQA
Holdings LLC — the Delaware limited liability company that was established by Flower
Payment as the U.S. entity that would acquire the membership interests —  all the
membership interests in International Energy Holding LLC.  See Ex. C-5.

50.   Also relevant to apparent authority are the following provisions of the Purchase
Agreement:

a.    Section 5.1 which states  "...The Buyer, Parent and FP Japan each, have all
requisite corporate or limited liability company power and authority to execute
and deliver this Agreement ...and to perform its obligations hereunder..."

b.    Section 5.2(a) which states:  "...As of the Closing, the execution, delivery and
performance of the Transaction Documents to which Buyer, Parent or FP Japan
will be a party will have been duly and validly authorized by such entities, and

c.    Section 5.2(b) which states  "This Agreement has been duly executed and
delivered by Buyer, Parent or FP Japan and constitutes, and as of the
Closing...will constitute...the valid and binding obligations of the Buyer, Parent or
FP Japan, enforceable against the Buyer, Parent or FP Japan in accordance with
their respective terms..."

Palmco was entitled to reasonably rely on these representations and warranties in believing
that the individuals negotiating and signing the Purchase Agreement were duly authorized
to act on Flower Payment's behalf.

51.  Flower Payment's post-closing conduct also supports that the Purchase Agreement was duly authorized by Flower Payment.  In the 18 months after Closing (*i.e.*, from November 2019 to April 2021), Flower Payment operated the business that it purchased.  There is no suggestion by the parties that in the entire 18-month time period, Flower Payment ever attempted to rescind or disavow any aspect of the transaction.

52.  On March 24, 2021, Mr. Greene e-mailed Ms. Kumar reminding her of GQA's and Flower Payment's obligation to make the  payment  of $1,646,690.02, due Palmco on April 30, 2021 pursuant to Section 2.2(c) of the Purchase Agreement.  Ex. C-42.  Again at this time, no one from Flower Payment disavowed the Purchase Agreement.  Instead, Flower Payment asked for more time to make payment.  Ex. C-11.

53.  All this evidence supports Claimant's position that Flower Payment authorized, agreed to and was a party to the Purchase Agreement.

### d.    <u>Flower Payment's Breach of the Purchase Agreement</u>

54.  Having concluded Flower Payment is a party to the Purchase Agreement, the only remaining question is whether it breached its obligations thereunder.  This is readilyconfirmed.

55.  Section 2.2(c) states: "On April 30, 2021, Buyer [i.e., GQA] shall pay in U.S. dollars, and Parent and FP Japan shall assure that Buyer has sufficient funds to pay to Palmco in U.S. dollars $1,646,690.02."  This provision imposed an explicit obligation to facilitate payment of the Collateral back to Palmco. Flower Payment breached this provision by failing to assure that GQA had adequate funds to pay Palmco the Collateral.

56.  Furthermore, Flower Payment guaranteed GQA's performance of the Purchase Agreement. Section 6.7 of the Purchase Agreement states that Flower Payment:

14

"irrevocably, absolutely, fully and unconditionally guarantee[s] to the Sellers, [and] Palmco...the prompt and complete performance and payment when due of all obligations, including payment obligations of the Buyer and of the Acquired Company hereunder...The Sellers, Palmco and Sellers Representative may enforce the..Guarantee without the necessity at any time of resorting to or exhausting any other security or collateral. This is a guarantee of payment when and as due and not merely of collection...

57.   Flower Payment breached this Guarantee by failing to meet GQA's obligations when that

entity defaulted.

## VI.   **AWARD**

58.   For the foregoing reasons, the Tribunal finds that Respondents, Flower Payment, Inc. and

GQA Holdings LLC, are jointly and severally liable to Claimant, Palmco Administration,

LLC, and awards Claimant the amount of:

   a.   US$1,646,690.02, together with interest at 12 percent per year from November 8,

   2019 to the date of the Final Award,[1] plus

   b.   Palmco's costs and disbursements, plus

   c.   The costs of the arbitration, the ICDR fees and the arbitrators' fees, plus

   d.   Its reasonable attorneys' fees and costs, plus

   e.   Its reasonable costs of collection and enforcement.

59.   Within fourteen (14) days of the date of this Partial Award, Claimant shall submit evidence

of the amount of interest it seeks through the date of this Partial Award and a daily interest

rate for the calculation of interest through the date of the Final Award, along with all

documented costs, disbursements and fees of  the amounts set forth in paragraph 58(b)-(d).

60.   Respondents shall thereafter have seven (7) days to respond to Claimant's submission.

---

[1] Interest is due in this amount pursuant to section 2.2(c) of the Purchase Agreement which states that "[i]f payment is not timely made, then interest at the rate of 12% per annum from Execution Date shall be due and payable to Palmco together will all costs of suit, arbitrators' fees, ICDR fees, costs of collection, costs of enforcement and attorneys fees.

61.  The Tribunal shall thereafter issue a Final Award in full settlement of all claims submitted to this Arbitration. The Tribunal reserves jurisdiction to calculate the aforementioned amounts in the final award.

62.  This Partial Final Award may be executed in any number of counterparts, each of which shall be deemed an original, and all of which shall constitute together one and the same instrument.

We, hereby certify that, for the purposes of Article I of the New York Convention of 1958, on the Recognition and Enforcement of Foreign Arbitral Awards, this Partial Final Award was made in New York, New York, U.S.A.

Date: Sept. 22, 2022

_____     _____     _____
Ms. Laurie Foster             Ms. Hagit Muriel Elul          Mr. Harold Aspis
Arbitrator                    Chair                          Arbitrator

*(affirmations on succeeding pages)*

17

Date: 9\22\22

_____        _____        _____
Ms. Laurie Foster                      Ms. Hagit Muriel Elul                  Mr. Harold Aspis
Arbitrator                               Chair                                        Arbitrator

*(affirmations on succeeding pages)*

Date: _September 22, 2022_

_____     _____     _____
Ms. Laurie Foster           Ms. Hagit Muriel Elul        Mr. Harold Aspis
Arbitrator                  Chair                        Arbitrator

*(affirmations on succeeding pages)*

17

STATE OF NEW YORK           )
                            )    SS:
COUNTY OF New York          )


I, Hagit Muriel Elul, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Partial Final Award.


_Sept. 22, 2022_
Date                                        _____
                                            Hagit Muriel Elul, Chair


STATE OF NEW YORK           )
                            )    SS:
COUNTY OF New York          )


On this 22ND day of September, 2022, before me personally came and appeared Hagit Muriel Elul, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_Blanche Edwards_
Notary Public

        BLANCHE EDWARDS
    Notary Public, State of New York
          No. 01ED6134224
      Qualified in Richmond County
    Certificate Filed in New York County
  Commission Expires September 26, 2025

18

STATE OF NEW YORK          )
                           )    SS:
COUNTY OF SUFFOLK)


I, Laurie Foster, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Partial Final Award.


9/22/22
_____                    _____
Date                                     Laurie Foster, Arbitrator


STATE OF NEW YORK          )
                           )    SS:
COUNTY OF SUFFOLK)

On this 22 day of September, 2022, before me personally came and appeared Laurie Foster, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_____
Notary Public


AUSTIN R. GUANGA CORONEL
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01GU6432684
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MAY 09, 2026

STATE OF NEW YORK            )
                             )    SS:
COUNTY OF WESTCHESTER        )

I, Harold Aspis, do hereby affirm upon my oath as Arbitrator that I am the individual described in and who executed this instrument, which is our Partial Final Award.

_September 22 2022_                    _Harold Aspis_____
Date                                  Harold Aspis, Arbitrator


STATE OF NEW YORK            )
                             )    SS:
COUNTY OF WESTCHESTER        )

On this 22nd day of September, 2022, before me personally came and appeared Harold Aspis, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_____
Notary Public

ROBERT DAMAST
Notary Public, State of New York
No. 02DA4672996
Qualified in Westchester County
Commission Expires December 31, 20 22

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

AMERICAN
ARBITRATION
ASSOCIATION®

# CERTIFICATION

---

**In the Matter of Arbitration Between:**

Case Number: 01-21-0016-1420

Palmco Administration, LLC
-vs-
Flower Payment, Inc. (formerly Flower Power, Inc.
and Flower Power Co. Ltd. Japan
a/k/a Flower Denryoky Kabushiki Kaisha)
-vs-
GQA Holdings LLC

---

State of New York          )
                           )   SS:
County of New York         )

Miroslava Schierholz being duly sworn deposes and says:

1.  She is the Assistant Vice President of the International Centre for Dispute Resolution (hereinafter referred to as the "ICDR"), the International Division of the American Arbitration Association, Inc. (hereinafter referred to as the "AAA"), a not-for-profit corporation organized under the Laws of the State of New York, having its principal offices at 120 Broadway, 21st Floor, New York, NY 10271.

2.  In such capacity, she assists in the management of all international arbitrations conducted pursuant to the rules of the AAA in its international Case Management Center.

3.  She has reviewed the ICDR's file pertaining to the above-captioned arbitration administered by the ICDR as case no. 01-21-0016-1420.

4.  She hereby certifies that the following document(s), as listed below and attached, is/are a true and exact cop(ies) of the same document contained in said file no. 01-21-0016-1420:

    - Partial Final Award dated September 22, 2022
    - Final Award dated December 09, 2022.

She hereby certifies that the subject arbitration was governed by the International Dispute Resolution Procedures as amended and in effect as of March 01, 2021. A copy of such Rules and Procedures is attached hereto.

Date: January 11, 2023

Miroslava Schierholz, LL.M

State of New York          )
                           )   SS:
County of New York         )


On this 11 day of January, 2023, before me personally came and appeared Miroslava Schierholz, to me known and known to me to be the individual described in and who executed the foregoing instrument and she acknowledged to me that she executed the same.

_____
Notary Public

QUINCY B SMITH
Notary Public - State of New York
NO. 01SM6175381
Qualified in Kings County
Certificate filed in New York County
My Commission Expires Oct 9, 2023