UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 03/06/2025
```

---

PALMCO ADMINISTRATION, LLC

                    Petitioner,

          - against -

FLOWER PAYMENT, INC. (F/K/A FLOWER
POWER, INC. and FLOWER POWER CO. LTD.
JAPAN A/K/A FLOWER DENRYOKY KABUSHIKI
KAISHA)

                    Respondent.

---

23 Civ. 7409 (VM)

**AMENDED DECISION
AND ORDER**

**VICTOR MARRERO, United States District Judge.**

Before the Court is the petition of Petitioner Palmco Administration, LLC ("Palmco" or "Petitioner") to confirm a final foreign arbitration award (the "Final Award") against Respondent Flower Payment, Inc. ("Flower Payment") pursuant to the Federal Arbitration Act, 9 U.S.C. § 207, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention.") (See Dkt. No. 1 [hereinafter "Petition"].) Palmco also seeks an award of attorneys' fees and costs in connection to bringing this Petition in federal court. For the reasons set forth below, Palmco's petition to confirm the arbitration award is **GRANTED**. Palmco's request for attorneys' fees and costs in this federal action is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

A. FACTUAL BACKGROUND

1

The underlying arbitration arose from Flower Payment's alleged breach of the Membership Interest Purchase Agreement ("MIPA") between Palmco, Flower Payment, and their respective subsidiaries, which was executed on November 8, 2019. (See Dkt. No. 5-2 ¶ 3 [hereinafter "Partial Final Award"].)

Palmco is a New York-based limited liability company that supplies electricity and natural gas to end users across the United States. (Partial Final Award ¶ 1.) Flower Payment is a Japan-based company that operates in the Japanese energy market. (Id. ¶ 2.) Approximately in 2018, Palmco and Flower Payment entered into an advisory agreement for which Palmco posted $1,646,690.02 as collateral ("Collateral") to secure Flower Payment's advisory services to help Palmco enter the Japanese energy market. (Id. ¶¶ 25, 29.) When Palmco eventually abandoned its efforts to enter the Japanese energy market, Palmco, Flower Payment, and their respective subsidiaries entered into the MIPA. Under the MIPA, Palmco would sell its Japanese subsidiary to Flower Payment subsidiary GQA Holdings LLC ("GQA") for a purchase price of approximately $1,048,000. The MIPA also required GQA to return the Collateral to Palmco as part of the sale and Flower Payment guaranteed that obligation. (Id. ¶ 29.) After the transaction closed on November 8, 2019, neither Flower

2

Payment nor GQA repaid the Collateral to Palmco when due or anytime thereafter. (Partial Final Award ¶¶ 37-38.)

The MIPA contained an arbitration clause in accordance with the International Arbitration Rules of the International Centre for Dispute Resolution ("ICDR Rules") applicable to resolve any disputes between the parties. The MIPA provided that New York federal courts would have personal jurisdiction over confirmation proceedings of any arbitral award entered. (See MIPA § 11.22.) Finally, enforcement of the MIPA's terms was to be governed by New York state law (Id. § 11.7(a).)

B. PROCEDURAL BACKGROUND

On August 12, 2021, after not receiving payment of the Collateral, Palmco commenced arbitration against Flower Payment and its subsidiary GQA, pursuant to the ICDR Rules. Although GQA did not appear at any time, (id ¶ 24), Flower Payment participated in the arbitration and asserted various defenses. (Id. ¶ 40.) The arbitration was presided by a three-member tribunal ("Tribunal"). (See Partial Final Award ¶ 7.) In May 2022, the Tribunal held a two-day merits hearing, during which witnesses appeared for cross-examination. (Id. ¶ 18.) On September 22, 2022, the Tribunal entered an award in favor of Palmco, finding Flower Payment and GQA jointly and severally liable for breach of the MIPA. (Id. ¶ 58.) The Tribunal awarded $1,646,690.02 in damages with $604,180.08 in

interest plus a daily interest amount of $541.38 to accrue from December 10, 2022, to the date of full payment of the Final Award, and $ 576,037.61 in costs and fees. (See Dkt. No. 5-3 ¶ 6 [hereinafter "Final Award".)

On August 21, 2023, Palmco initiated this action by filing the instant Petition. Flower Payment does not oppose the Petition.[1] On February 10, 2025, Palmco filed an application for attorneys' fees in connection with bringing the instant Petition. (Dkt. No. 33). Flower Payment does not oppose the application.[2]

## II. LEGAL STANDARD

There is no dispute that this award falls under the New York Convention. The arbitration agreement is a written one; covering a commercial subject matter; providing for arbitration in the territory of a signatory of the convention[3]; and not entirely domestic in scope. Exclusive

---

[1] On May 10, 2024, Flower Payment filed a Motion to Dismiss the Petition for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). ("Motion to Dismiss," Dkt. No. 21.) On February 18, 2025, after the parties fully briefed the Motion to Dismiss, Flower Payment notified the Court of its intent to withdraw the Motion to Dismiss. ("Withdrawal Letter," Dkt. No. 37.) Therefore, the Court will not consider any arguments made in Flower Payment's Motion to Dismiss and will treat this petition as unopposed.

[2] In its Withdrawal Letter, Flower Payment asked the Court to "take this letter as Flower Payment's response to Petitioner's pending motion for attorneys' fees" without noting any opposition to the application. (Dkt. No. 37 at 1.)

[3] Palmco's principal place of business is in New York, where the arbitration took place.

Trim v. Kastamonu Romania, S.A., 698 F. Supp. 3d 621, 625
(S.D.N.Y. 2023). Article V of the New York Convention governs
a district court's review of an application to confirm a
foreign arbitral award. See Commodities & Minerals Enter.
Ltd. v. CVG Ferrominera Orinoco, C.A., 49 F.4th 802, 809 (2d
Cir. 2022); see also 9 U.S.C. §§ 201-208 (incorporating the
New York Convention). When a party applies to confirm an
arbitral award under the New York Convention, "[t]he court
shall confirm the award unless it finds one of the grounds
for refusal or deferral of recognition or enforcement of the
award specified in the said Convention." 9 U.S.C. § 207.
Article V contains an exclusive list of seven defenses to
confirmation and the "party opposing enforcement of an
arbitral award has the burden to prove one of the seven
defenses under the New York Convention applies." New York
Convention Art. V(1); Encyclopaedia Universalis S.A. v.
Encyclopaedia Britannica, Inc., 403 F.3d 85, 90 (2d Cir.
2005). The burden is a heavy one, as "the showing required to
avoid summary confirmance is high." Yusuf Ahmed Alghanim &
Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)
(citations omitted).

　　　"The review of arbitration awards is 'very limited . . .
in order to avoid undermining the twin goals of arbitration,
namely, settling disputes efficiently and avoiding long and

expensive litigation.'" <u>Id.</u> at 23 (citing <u>Folkways Music Publishers, Inc. v. Weiss</u>, 989 F.2d 108, 111 (2d Cir. 1993). Confirmation of an award under the New York Convention is "a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." <u>Zeiler v. Deitsch</u>, 500 F.3d 157, 169 (2d Cir. 2007) (citations omitted). The review is "extremely deferential" to the findings of the arbitration panel. <u>Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC</u>, 497 F.3d 133, 139 (2d Cir. 2007). Ultimately, a district court must enforce the award "unless a litigant satisfies one of the seven enumerated defenses [under the New York Convention]; if one of the defenses is established, the district court may choose to refuse recognition of the award." <u>Exclusive Trim, Inc.</u>, 698 F. Supp. 3d at 626 (citations omitted).

### III. <u>DISCUSSION</u>

Neither party disputes the merits or damages awarded in the Final Award and Flower Payment does not assert any Article V defenses. In the absence of dispute on these points, the Court need only determine whether the arbitration panel acted within the scope of its authority. <u>See</u> <u>Viamedia, Inc. v. WideOpenWest Fin., LLC</u>, No. 20 CIV. 4064, 2021 WL 3550236, at *2 (S.D.N.Y. Aug. 11, 2021). Having reviewed the Petition,

the memorandum of law submitted by each of the parties, as well as the accompanying documents on the record of this action, the Court is persuaded that the arbitration panel acted within the scope of its authority and confirms the Final Award. Id. Nor are there other grounds for setting aside the Final Award.

A. Fees and Costs

The Court confirms the award of reasonable fees and costs incurred in the arbitration proceedings. Section 2.2(c) of the MIPA provides that if the Collateral is not paid to Palmco by the deadline, Palmco is entitled to ICDR fees, costs of collection, costs of enforcement and attorney fees. (See MIPA § 2.2(c).)

Regarding specific fees and costs, the Final Award held Flower Payment and GQA jointly and severally liable for $20,872.50 in ICDR administration fees and $94,227.50 in arbitrator compensation. (See Final Award ¶ 6.) Palmco was awarded $350,275.11 in reasonable attorney's fees and costs. (Id. ¶ 6(d).) The Tribunal based its decision to award these specific fees on the failure of Flower Payment to respond to Palmco's application for reasonable fees and costs incurred in the proceedings, despite being given the opportunity to do so. (Id. ¶ 2.) This is a "colorable justification" for the

award in this case. See In re Marine Pollution Serv., Inc., 857 F.2d 91, 94 (2d Cir. 1988).

B. Interest

The Court also confirms the Final Award's awarding of interest. The Tribunal awarded Palmco a total of $604,180.08 in interest plus a post-award interest amount of $541.38 per day to accrue from December 10, 2022, to the date of payment in full of the Final Award. (Final Award ¶¶ 6(b), (c).) As the Tribunal noted, the MIPA provides that if payment of the Collateral is not timely made, Palmco is owed interest at the rate of twelve percent per annum from the Execution Date (November 8, 2019) to the date of payment in full of the Final Award. (MIPA § 2.2(c).) The Court finds no basis to second-guess the Tribunal's decision to hold Flower Payment and GQA liable for the specified amount of the interest rate.

C. Fees and Costs in Federal Proceeding

In federal practice, the general rule is that each party bears its own attorneys' fees. McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312-13 (2d Cir. 1993) (collecting cases). However, "parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to attorneys' fees if the contract is valid under applicable state law." Id. at 1313. Moreover, "New York courts have awarded attorney's fees for confirmation proceedings, in

addition to underlying arbitration proceedings, where the fee-shifting agreement between the parties so permits." Coscarelli v. Esquared Hospitality LLC, No. 18-CV-5943-JMF, 2021 WL 293163, at *9 (S.D.N.Y. Jan. 28, 2021).

Neither party disputes the validity of the MIPA or the meaning of the fee-shifting provision which provides that the costs of collection and enforcement are due upon a default of payment of the Collateral. (MIPA § 2.2(c).) The Court therefore finds that the MIPA expressly provides for an award of attorneys' fees incurred in the instant confirmation proceeding.

When a prevailing party seeks attorneys' fees pursuant to a contractual provision, "the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as the amounts are not unreasonable." Fleisig v. ED&F Man Cap. Mkts., Inc., No. 19 Civ. 8217 (DLC), 2021 WL 4459120, at *2 (S.D.N.Y. Sept. 29, 2021) (quoting F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987)). "Attorneys' fees are awarded by determining a presumptively reasonable fee, reached by multiplying a reasonable hourly rate by the number of reasonably expanded hours." Bergerson v. N.Y. State Off. Of Mental Health, Cent. N.Y. Psychiatric Ctr., 652 F.3d 277, 289 (2d Cir. 2011).

Courts in the Second Circuit generally use "the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." Id. (internal citations omitted). Those hourly rates "are the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (citations omitted). In conducting this analysis, courts "bear in mind *all* of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly late." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. Of Albany & Albany Cnty. Bd. Of Elections, 522 F.3d 182, 190 (2d Cir. 2008) (emphasis in original). Among the relevant case-specific variables is the complexity of the matter being handled. See Lilly v. City of New York, 934 F.3d 222, 231-32 (2d Cir. 2019).

Petitioner seeks an award of $186,686.50 in attorneys' fees in connection with this Petition. Work on this petition included drafting the petition to confirm the award, briefing Flower Payment's now-withdrawn Motion to Dismiss, and drafting the application for attorney's fees. In support of the Fee Motion, Palmco's attorneys, Hunton Andrews Kurth LLP ("Hunton") submitted a declaration listing the attorneys and

paralegals staffed on the matter, their hourly rates, and the attorneys' seniority levels and experience. (Dkt. No. 35 [hereinafter "Ostrower Declaration"].) Hunton also submitted a Fees and Expense Record as an attachment to the declaration, showing the tasks performed by Hunton and corresponding time spent on each. (Dkt. No. 35-1 [hereinafter "Fees and Expense Record"].)

On behalf of Palmco, four attorneys from Hunton litigated this petition, with support from a senior paralegal and managing clerk.[4] (Ostrower Declaration ¶¶ 17-22.) Torsten Kracht ("Kracht"), a partner at Hunton with over 27 years of experience in complex commercial litigation and international arbitration, billed 0.7 hours working on this matter at an hourly rate of $1,170 to $1,275. (Id. ¶ 23; Fees and Expense Record at 4, 11.) Silvia Ostrower ("Ostrower"), a counsel at Hunton with over 22 years of experience focusing on domestic and international litigation, billed 136.9 hours working on this matter at an hourly rate of $925 to $1,020. (Ostrower Declaration ¶¶ 18, 23; Fees and Expense Record at 1-15.) Joseph J. Saltarelli ("Saltarelli"), a counsel at Hunton with 35 years of experience, billed 7 hours working on this matter

---

[4] Petitioner's submissions indicate that Gregory Hesse was also involved with these confirmation proceedings but only expended 0.5 hours on the matter and Petitioners do not otherwise address his work or qualifications in their declarations. (Fees and Expense Record at 3.) Therefore, the Court will not consider Hesse's fees in determining its award.

at an hourly rate of $1,260. (Ostrower Declaration ¶¶ 20, 23; Fees and Expense Record at 14-15.) Mitchell E. McCloy ("McCloy"), a mid-level associate at Hunton whose practice focuses on commercial litigation, billed 32.7 hours on this matter at an hourly rate of $750. (Ostrower Declaration ¶¶ 21, 23; Fees and Expense Record at 9-13, 15-16.) Senior Paralegal Raymond E. Galbraith ("Galbraith"), who has over thirty years of experience, billed 12.7 hours on this matter at an hourly rate of $440. (Ostrower Declaration ¶¶ 22-23; Fees and Expense Record at 9-13, 15-16.) Bradford C. Mulder ("Mulder"), Managing Clerk at Hunton with over 30 years of experience, billed 8.8 hours on this matter at an hourly rate of $500 to $525. (Ostrower Declaration ¶ 22; Fees and Expense Record at 5-8, 11, 13, 15.)

The Court finds that the Hunton hourly rates are unreasonably high for a petition to confirm an arbitral award. Recently, courts in this district examining the reasonableness of fees awarded in relation to petitions to confirm an arbitral award have analyzed the relative complexity of the confirmation proceedings to determine whether the fees are reasonable. See Access Bio, Inc. v. Division 5 Labs, Inc., 23 Civ. 42820, 2024 WL 3084990, at *2 (S.D.N.Y. June 20, 2024); Sire Spirits, LLC v. Green, 21 Civ. 7343, 2022 WL 16578960, at *2 (S.D.N.Y. Nov. 1, 2022); Major

League Baseball Properties, Inc. v. Corproacion de Television y Microonda Rafa, S.A., 19 Civ. 8669, 2021 WL 56904, at *3 (S.D.N.Y. Jan. 7, 2021). In those cases, billing rates similar to the ones requested here were reduced under the rationale that petitions to confirm arbitral awards are not as complex as other commercial litigation proceedings. See, e.g., Sire Spirits, 2022 WL 16578960, at *2; Major League Baseball Properties, Inc., 2021 WL 56904, at *3-4.

Here, while challenging issues of law were raised in the motion to dismiss briefing, the case does not otherwise present sufficient complexities to warrant the high fees charged here. Accordingly, the Court reduces the hourly rates for the Hunton attorneys as follows: $750 for Kracht, Ostrower, and Saltarelli and $500 for McCloy. See Sire Spirits, 2022 WL 16578960 (awarding $750 hourly fee to partners and $450 for the associate in a confirmation proceeding that included briefing on a motion to vacate.) Furthermore, the Court reduces the hourly rates for Galbraith, the paralegal, and Mulder, the managing clerk, to $200 per hour. See 1079 Fam. Tr. Licensor, LLC v. Darij, No. 19 Civ. 4389, 2020 WL 9596279, at *1 (S.D.N.Y. Sept. 30, 2020 ("Courts in this district typically approve paralegal hourly rates between $150 and $200.")

Once reasonable hourly rates are established, courts must assess the reasonable number of hours worked to determine the presumptively reasonable fee. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany, 522 F.3d 182, 183 (2d Cir. 2008). The Court must consider both the "contemporaneous time records . . . [that] specify, for each attorney, the date, hours expended, and nature of the work done," N.Y. State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), and "its own familiarity with the case . . . and its experience generally." Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992). Based on the time entries and detailed narratives, the Court finds that the gross number of hours expended on this litigation is reasonable. However, the Court is troubled by the ratio of associate to partner/counsel hours, which should typically reflect more associate hours than partner/counsel hours. See Beastie Boys v. Monster Energy Co., 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015). In particular, counsel Ostrower expended the most hours (136.9) on this matter, doing the vast majority of work including legal research, drafting the petition, and drafting the briefing in relation to Flower Payment's motion to dismiss. (See generally Fees and Expense Record.) The associate on the matter, McCloy, expended a total of 32.7 hours on this matter. (See Fees and Expense Record at 12.)

While the Court appreciates the difficult legal issues involved in Flower Payment's now-withdrawn motion to dismiss, arguably much of the legal research and initial drafting could have been accomplished by an associate, saving a considerable amount in fees. For this reason, the Court will reduce Ostrower's hours by twenty five percent which when assessed under the reduced attorney and paralegal hourly rates discussed above, results in total attorneys' fees of $108,565.

Petitioner also seeks $10,550 in costs associated with a vendor that specialized in service under the Hague Convention who served Flower Payment in Japan in connection with this Petition. (Dkt. No. 33 at 14.) Because Flower Payment did not respond to Palmco's request to accept service by email or otherwise waive service, the Court also approves as reasonable the $10,550 expense for the vendor specializing in service under the Hague Convention.

## IV.  <u>ORDER</u>

For the foregoing reasons, it is hereby

**ORDERED** that the petition to confirm the non-domestic arbitration award filed by petitioner Palmco Administration, LLC ("Palmco") (Dkt. No. 1) is **GRANTED**; it is further

**ORDERED** that judgment against respondent Flower Payment, Inc. ("Flower Payment") be entered in the amounts of (1)

$1,646,690.02 with $604,180.08 in interest plus post-award interest of $541.38 per day from December 10, 2022 to the date of payment in full of the Final Award ; (2) $350,275.11 in attorneys' fees and costs in connection with the underlying arbitration; (3) $110,662.50 in arbitration fees and arbitrator compensation; and (4) $119,115 in attorneys' fees and costs in connection with bringing the instant petition.

The Clerk of Court is directed to terminate all pending motions and to close this case.

**SO ORDERED.**

Dated:        6 March 2025
              New York, New York

_____
                Victor Marrero
                U.S.D.J.